**ARTHUR ANDERSEN, INC., Plaintiff,**

v.

**INTERNAL REVENUE SERVICE,
Defendant.**

Civ. A. No. 80–0705.

United States District Court,
D.C. District of Columbia.

May 21, 1981.

John J. McGrath, Jr., Donovan, Leisure, Newton & Irvine, Washington, D.C., for plaintiff.

Michael J. Salem, Tax Division, U.S. Dept. of Justice, Washington D.C., for defendant.

## MEMORANDUM OPINION AND ORDER

JOYCE HENS GREEN, District Judge.

In this action under the Freedom of Information Act, 5 U.S.C. § 552 ("FOIA"), the parties have both moved for summary judgment and the matter is ripe for disposition. Plaintiff, Arthur Andersen & Co. ("Andersen"), is a national public accounting firm, seeking disclosure under 5 U.S.C. § 552(a)(2)[1] and 26 U.S.C. § 6110(a)[2] of three groups of documents withheld by the defendant, the Internal Revenue Service ("the Service"), the government agency charged with the administration and enforcement of the nation's tax laws. While the plaintiff asserts that the withholdings disregard the clear mandate of the FOIA to divulge records of government agencies to public illumination, the Service invokes the mantel of Exemption 3[3] and 5.[4]

When plaintiff filed its administrative request for materials, the Service responded by classifying the resulting documents into four groups.[5] Group I documents have been provided to Andersen and are not at issue in the litigation. Group II is comprised of a single General Counsel Memorandum ("GCM"), No. 37099, prepared by the Interpretative Division of the Office of Chief Counsel. The materials in Group III are 14 pages of background documents to Revenue Ruling 77–284 and a Technical Advice Memorandum from the National Office of the Service. Numerous drafts of Revenue Ruling 77–284 and accompanying Background Information Notes constitute Group IV. All of the materials have been submitted to the Court for an *in camera* review.

General Counsel Memoranda have been the subject of recent litigation in the Court of Appeals for this Circuit. In *Taxation with Representation Fund v. Internal Revenue Service*, 646 F.2d 666 (D.C.Cir.1981), the Court ruled that whether GCMs would be protected from disclosure under exemption 5 of FOIA, privileged as part of the deliberative process, depended on their position in the course of decision-making. Most GCMs are prepared by the Office of Chief Counsel in response to a formal request from the Assistant Commissioner (Technical), who is seeking advice in connection with a review of a proposed private letter ruling, a proposed technical advice memorandum, or a proposed revenue ruling. Consequently, unless the GCMs were not distributed throughout the agency or disclosure was sought of the GCMs prior to issuance of a final decision on the proposed determinations, they were not considered part of the deliberative process. Accordingly, exemption 5 was held inapplicable because the GCMs "function as a 'body of working law' within the IRS." *Id.*, at 682.

---

1. Section 552(a)(2) of the FOIA provides, in relevant part, that agencies shall make available for public inspection "final opinions, including concurring and dissenting opinions, as well as orders, made in the adjudication of cases" and "statements of policy and interpretation which have been adopted by the agency and are not published in the Federal Register." 5 U.S.C. § 552(a)(2).

2. 26 U.S.C. § 6110 establishes a mechanism for the public inspection of written determinations and background file documents, with appropriate procedural safeguards and time limitations.

3. Exemption 3 of the FOIA protects from disclosure items "specifically exempted from disclosure by statute (other than section 552b of this title), provided that such statute (A) requires that the matters be withheld from the public in such a manner as to leave no discretion on the issue, or (B) establishes particular criteria for withholding or refers to particular types of matters to be withheld." 5 U.S.C. § 552(b)(3).

4. Exemption 5 includes "inter-agency and intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency."

5. In the interests of convenience, the documents at issue in the instant suit will be classified in the same manner as referred to by the parties.

An examination of the affidavit describing the GCM at issue here, confirmed by an *in camera* review, readily demonstrates that the document is precisely the type of GCM which the Court in *Taxation with Representation* ordered disclosed. The affidavit of John D. Howard, an attorney in the Office of Chief Counsel describes the GCM as follows:

> [T]he [document] at issue in the instant lawsuit is a General Counsel Memorandum (GCM) dated April 20, 1977, from the Acting Chief Counsel of the Internal Revenue Service to the Assistant Commissioner (Technical). The GCM indicates that it was written in response to a request from Technical's Corporation Tax Division that the Office of Chief Counsel review a proposed revenue ruling dealing with certain issues. The GCM identifies the taxpayer whose case gave rise to the proposed revenue ruling.

(Howard Affidavit, ¶ 3.) It is further stated that the GCM

> describes the reaction of the Office of Chief Counsel to the proposed revenue ruling submitted for review by the Corporation Tax Division. The GCM states that the Acting Chief Counsel agrees with most of the proposals set forth in the draft revenue ruling, but disagrees with that Division's proposals regarding one particular issue. The GCM also indicates that the Office of Chief Counsel, in one instance where it disagrees with the proposed revenue ruling, has made a proposed revision to that portion of the ruling. The revised proposed ruling is attached to the GCM.

(*Id.*, ¶ 4.)

The instant case's GCMs are apparently similar to those in *Taxation with Representation*, which tellingly described them as:

> .... memoranda from the Chief Counsel to the Commissioner written originally for the purpose of guiding the Assistant Commissioner (Technical) concerning substantive issues on proposed revenue rulings, private letter rulings, and technical advice memoranda. The evidence also reveals that the same qualities that make these memoranda useful to the Assistant Commissioner (Technical) recommend the memoranda to agency lawyers for legal research and to agency field personnel in need of guidance in dealing with the public on certain tax liability issues. Moreover, the fact that earlier GCMs are constantly updated to reflect the current status of an issue within the Office of Chief Counsel, combined with the "reconciliation" of positions taken by the Chief Counsel in GCMs with those ultimately adopted by the decisionmaker in the formal rulings, eliminates whatever deliberative character these documents may have had prior to their being "updated" or "reconciled." In essence, after a decision has been reached, a completed GCM becomes an expression of agency policy.
>
> The GCM explains rulings issued by the Assistant Commissioner, and it serves as an interpretative guide and research tool for agency personnel. We are thus persuaded that GCMs function as a body of "working law" within the IRS.

*Taxation with Representation*, supra, at 682. A comparison of the Howard affidavit with the description in *Taxation with Representation* reveals that the GCM in the instant suit was an attempt to guide "the Assistant Commissioner concerning [a] substantive issue on [a] proposed revenue ruling ..." *Id.*

■ A review of the material *in camera* corroborates the need for disclosure. Judge Richey, in the District Court opinion in *Taxation with Representation Fund, Inc. v. Internal Revenue Service*, 485 F.Supp. 263 (D.D.C.1980), *aff'd in part and remanded in part*, 646 F.2d 666 (D.C.Cir.1981), noted that

> GCM's are maintained by the Office of General Counsel and frequently cited by subsequent GCM's to insure consistency, avoid duplication of research, provide a reference source, and update earlier memoranda when a position on an issue is sustained, modified, or changed within the Office of Chief Counsel.

*Id.* at 266. The particular GCM in this dispute contains two citations to prior GCMs and two recommendations from the

Chief Counsel for alterations in the proposed revenue ruling. It is then appropriately subject to the disclosure requirements of FOIA, save for the name of the taxpayer which should be redacted from that GCM to protect the confidentiality guaranteed by 26 U.S.C. § 6103(b)(2)(A).

The documents in Group III, background material and a Technical Advice memorandum concerning Revenue Ruling 77–284, are claimed by the Service as protected by exemption 3 of FOIA, which refers to information protected from disclosure by another statute. *See* note 3, *supra*. The Service contends that the material is "return information" and confidential under 26 U.S.C. § 6103. Andersen maintains that the only "return information" in the documents are references which identify the particular taxpayer who is soliciting the ruling. Thus, 26 U.S.C. § 6103(b)(2)(A), which defines return information, by the "Haskell amendment," to "not include data in a form which cannot be associated with, or otherwise identify, directly or indirectly, a particular taxpayer," permits release of the material with the identity redacted from the text. Under the view of the Service, this interpretation of the definition embodied in § 6103(b)(2)(A) sweeps too broadly; it claims that Congress only meant to exclude from confidentiality statistical compilations of general tax information, not particular background material with the taxpayer's identity merely excluded.

Our Circuit has recently dispelled the Service's rigid stance. In *Neufeld v. Internal Revenue Service*, 646 F.2d 661 (D.C.Cir. 1981), the Court determined that "return information, properly defined, includes only information that directly or indirectly identifies a particular taxpayer. . . ." *Id.*, at 665, accepting the interpretation of § 6103(b)(2)(A) articulated by the Ninth Circuit in *Long v. Internal Revenue Service*, 596 F.2d 362 (9th Cir. 1979), *cert. denied*, 446 U.S. 917, 100 S.Ct. 1851, 64 L.Ed.2d 271 (1980), *see Neufeld, supra*, at 665 ("we hold . . . in accordance with the Ninth Circuit's holding in *Long* . . . ."). The Court in *Long* declared

by [the terms of § 6103] data that do not identify is disclosable . . . [I]t is the clear purpose of section 6103 to protect the privacy of taxpayers. At the same time the amendment demonstrates a purpose to permit the disclosure of compilations of useful data in circumstances which do not pose a serious risk of a privacy breach. Our reading of the statute implements these dual purposes.

*Long, supra*, at 368.

■ *Neufeld* decided that the District Court was to exercise discretion to determine which aspects of a document might pose a risk of identifying the taxpayer. An examination of the Group III documents reveals that not only must the name of the taxpayer be redacted, but also names of any individuals employed by the taxpayer, the taxpayer's parent company, and all precise dates indicated by month and date, although the year of a particular transaction appears to pose no risk of identification. Other than these particulars, however, the materials in Group III should be disclosed to the plaintiff.

Group IV documents are various drafts of Revenue Ruling 77–284 and accompanying notes. While the Service maintains that under the deliberative process privilege, applied through exemption 5 of FOIA, these documents are protected from disclosure, Andersen contends that the Service's submissions are insufficient to describe the importance of these particular materials to the policy making process and thus disclosure is warranted.

■ The government may claim documents as exempt under the deliberative process privilege where two preconditions are met. First, the material must be predecisional, i. e., "generated before the adoption of agency policy." *Coastal States Gas Corp. v. Department of Energy*, 617 F.2d 854, 866 (D.C.Cir.1980). Second, the material must be deliberative, i. e., reflecting "the give and take of the consultative process." *Id.* The Court continued:

The exemption thus covers recommendations, draft documents, proposals, suggestions, and other subjective documents

which reflect the personal opinions of the writer rather than the policy of the agency .... To test whether disclosure of the document is likely to affect the purposes of the privilege, courts ask themselves whether the document is so candid or personal in nature that public disclosure is likely in the future to stifle honest and frank communication within the agency.

*Id.* In *Taxation with Representation, supra,* the Court analyzed the *Coastal States* decision in terms of three factors to be weighed and examined by the court: the function and significance of the document in the agency decisionmaking process, the nature of decisionmaking authority vested in the office or person issuing the disputed document, and whether the document flowed from superiors to subordinates, or *vice versa.*

■ The difficulty posed by the Service's position that the documents in Group IV are part of the deliberative process is that no specific reference is made in the record to the importance of the drafts in the decisionmaking process. The *in camera* review reveals that the material was apparently circulated to a number of individuals within the Service, each of whom made alterations in the draft. But *Coastal States* and other cases clearly require the agency to justify non-disclosure with particular references to each document and its importance in the process of policy making. For example, in *Parke Davis & Co. v. Califano,* 623 F.2d 1 (6th Cir. 1980), the Court wrote,

> The fact that a document contains advice or recommendations from a subordinate is not enough. The district court must know how each document fits into the deliberative process, and whether it is an essential element of that process or possibly a peripheral item which just 'beefs up' a position with cumulative materials. As all courts and commentators have agreed, the overwhelming thrust of FOIA is toward complete disclosure. We require specificity and detail in support of an Exemption 5 claim.

*Id.* at 6. The defendant has chosen to invoke a general, nonspecific exemption, stating in its position paper submitted with the Group IV documents that the drafts "represent the agency's 'working out' process of its policy on Revenue Ruling 77–284. The draft is reflective of the overall deliberative process." Def. Position Paper at 7. The Service has simply not met its "burden of establishing what deliberative process is involved, and the role played by the documents in issue in the course of that process." *Coastal States, supra,* at 868.

Without some indication of the nature of the decisionmaking process, *in camera* review alone cannot support the Service's general claim of exemption. Because the *in camera* process is essentially *ex parte,* the government must provide particularized and detailed support for its claim of exemptions, not general conclusory statements. *See Mead Data Central, Inc.,* 566 F.2d 242, 251 (D.C.Cir.1977); *Vaughn v. Rosen,* 484 F.2d 820, 826–28 (D.C.Cir.1973), *cert. denied* 415 U.S. 977, 94 S.Ct. 1564, 39 L.Ed.2d 873 (1974).

Congress, reflecting the wants and needs of the people, through the FOIA, has granted virtually uncurbed access to all government documents, encumbered only by nine specific exemptions protecting the national interests and efficiency of government. The burden is on the agencies to establish their right to withhold information from the inquiring public. When that burden fails, leaving no persuasion as to the agency's correctness of decision, then the Court's action has been dictated.

James Madison's memorable words are well suited to the purpose of the FOIA:

> Knowledge will forever govern ignorance, and a people who mean to be their own governors must arm themselves with the power knowledge gives. A popular government without popular information or the means of acquiring it, is but a prologue to a farce or a tragedy or perhaps both.

*See* S.Rep.No. 89–813, 89th Cong., 1st Sess. at 2–3 (1965).

It appearing that no material factual issues remain and that the plaintiff is entitled to judgment as a matter of law, it is this 20th day of May, 1981

ORDERED that the plaintiff's motion for summary judgment be and it hereby is granted subject to the qualification that all identifying information of the particular taxpayer be redacted from the documents, and it is

FURTHER ORDERED that the defendant's motion for summary judgment be and it hereby is denied, and it is

FURTHER ORDERED that the plaintiffs submit a verified statement of fees and costs, with appropriate points and authorities, within ten days from this date, and the response, if any, be filed ten days thereafter.