WILLAMETTE INDUSTRIES, INC.,
Plaintiff-Appellee,

v.

UNITED STATES of America, Roscoe Egger, Commissioner of Internal Revenue, Ralph B. Short, Arturo A. Jacobs, Robert M. Cutts, and Robert M. McKeever, District of Internal Revenue Service, Defendants-Appellants.

No. 81–3560.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Aug. 5, 1982.

Decided Oct. 7, 1982.

shown to justify the delay in the institution of forfeiture proceedings.

James Miller, Atty., Washington, D.C., for defendants-appellants.

Philip N. Jones, Duffy, Georgeson, Kekel & Benner, Portland, Or., for plaintiff-appellee.

Before KILKENNY, SNEED, and SKO-PIL, Circuit Judges.

SKOPIL, Circuit Judge:

The IRS appeals from a district court order requiring it to comply with a taxpayer's Freedom of Information Act ("FOIA") request for data from third party taxpayers' files regarding timber sales and valuation, with the taxpayers' names and total volume of timber deleted. We affirm.

## I.

Appellee, Willamette Industries, a timber producer and manufacturer of wood and forest products, made a FOIA request for disclosure of documents kept by the Internal Revenue Service ("IRS"), which would show how the IRS arrives at fair market values for timber in making tax assessments for the timber harvested by appellee each year. Willamette requested administrative manuals and instructions regarding timber valuation.

Willamette also requested two types of documents, from five different geographic areas for the years 1970–1976. The first was engineering and valuation reports (EVRs), which are prepared by foresters during a disputed audit of an individual taxpayer, and reflect the valuation of the timber owned by that specific taxpayer.

The second type of documents are called private timber sales data, and are compiled during the audit of a taxpayer. Unlike the EVRs, which list valuations of timber owned by the audited taxpayer, the private timber sales data are compilations of comparable sales by other taxpayers, and are used by the auditors as references to determine the market value of the audited taxpayer's timber. These compilations are gleaned from data supplied by consultants as well as from forms filed by taxpayers who have sold timber during the taxable year. Interestingly, the IRS does not compile a centralized table of timber valuations, either from its own valuations or from comparable sales. Both the EVRs and the private timber sales data are kept only in individual audit files. Thus there is no available information about how the IRS has actually valued specific types of timber in different locations.

The IRS released only the administrative manuals, and Willamette filed suit to compel disclosure of the EVRs and private timber sales data. The IRS moved for summary judgment. The district court ordered the government to conduct a search of representative files, and to provide the general information regarding the number of files within the scope of the request, the number of files already searched, the time already taken conducting the search, and the time needed to complete the search. The government was also ordered to provide a description of all the material in the files including which parts, if any, are non-exempt, and to offer justification for continuing to withhold all information. The court also requested affidavits from IRS officers setting forth other relevant information.

After the IRS filed the requested information and affidavits, the district court calculated that the documents requested totaled 453,934 pages contained in 1,343 files. The court denied the IRS' motion for summary judgment.

Willamette filed a motion for summary judgment. Willamette reduced its original request for EVRs to the two areas of western Oregon and northern Louisiana, and

only for the tax years ending in 1974, 1975 and 1976; and limited the request for private sales data to the same geographic areas for the period from June 30, 1973 to June 30, 1976. There was no recalculation of the number of pages covered by the limited request, though the number of years requested had been cut in half, and the geographic areas had been reduced from five to two.

A hearing was held on December 2, 1980. On May 28, 1981 the district court filed its opinion in favor of Willamette, holding that the documents were not exempt under FOIA exemption 3 and that the EVRs were final opinions required to be disclosed under 5 U.S.C. § 552(a)(2)(A). 530 F.Supp. 904. Judgment was entered on July 27, 1981, ordering the IRS to release the EVRs with the taxpayers' names and total volume of each tract deleted, and to disclose the private sales data with the names of the taxpayers, the purchasers of the timber, and the total volume of timber deleted. The IRS appeals.

## II.

The issues on appeal are:

1. Whether the district court's finding that the requested documents can be edited to avoid indirect identification of taxpayers is clearly erroneous, and thus the documents would be exempt from disclosure under FOIA exemption 3; and

2. Whether the district court erred in holding that the requested documents were "data" which is not exempted from disclosure by the Haskell Amendment, 26 U.S.C. § 6103(b)(2).

## III.

■ The district court's findings of fact regarding danger of indirect identification and segregability can be overturned on appeal only if they are clearly erroneous. Fed.R.Civ.P. 52(a); *United States v. Missouri River Breaks Hunt Club,* 641 F.2d 689, 694 (9th Cir. 1981). The burden of proof is on the IRS to sustain its claim that the requested documents are exempt from disclosure under the FOIA. 5 U.S.C. § 552(a)(4)(B).

## IV.

The Freedom of Information Act, 5 U.S.C. § 552, provides for federal agencies to disclose documents unless they fall within a specific statutory exemption. Exemption 3 of the FOIA, 5 U.S.C. § 552(b)(3), permits the withholding of matters that are "specifically exempted from disclosure by statute," if the statute meets certain specified criteria.

Section 6103 of the Internal Revenue Code of 1954, 26 U.S.C. § 6103, has been held to qualify as an exemption 3 statute. *See, e.g., Long v. United States Internal Revenue Service,* 596 F.2d 362, 365–66 (9th Cir. 1979), *cert. denied,* 446 U.S. 917, 100 S.Ct. 1851, 64 L.Ed.2d 271 (1980); *Chamberlain v. Kurtz,* 589 F.2d 827, 838–39 n.33 (5th Cir. 1979), *cert. denied,* 444 U.S. 842, 100 S.Ct. 82, 62 L.Ed.2d 54 (1979). Section 6103 provides detailed rules prohibiting disclosure of tax "returns" and "return information". The 1976 amendment to section 6103 (the "Haskell Amendment") provides that the term "return information" "does not include data in a form which cannot be associated with, or otherwise identify, directly or indirectly, a particular taxpayer." 26 U.S.C. § 6103(b)(2).

This court has construed the Haskell amendment to mean that data that does not identify a particular taxpayer is not "return information" and thus is subject to disclosure under the FOIA. *Long v. Internal Revenue Service,* 596 F.2d at 368; *see also Neufeld v. Internal Revenue Service,* 646 F.2d 661, 665 (D.C.Cir.1981).

■ The FOIA provides that "[a]ny reasonably segregable portion of a record shall be provided to any person requesting such record after deletion of the portions which are exempt under this subsection." 5 U.S.C. § 552(b). The focus of the FOIA is information, not documents, and the agency cannot justify withholding an entire document simply by showing that it contains some exempt material. "Non-exempt portions of a document must be disclosed unless they are inextricably intertwined with exempt portions" such that the excision of

exempt information would impose significant costs on the agency and produce an edited document with little informational value. *Mead Data Central, Inc. v. U.S. Department of Air Force,* 566 F.2d 242, 260–61 (D.C.Cir.1977); *Neufeld v. Internal Revenue Service,* 646 F.2d at 666; 5 U.S.C. § 552(d).

The district court found that the requested documents could be edited and disclosed without danger of identifying the taxpayers to which the documents apply, that the government had failed to show that the documents would be meaningless after the deletions, and further found that the IRS' editing burden would not be excessive.

■ A review of the record reflects that the district court's findings are not clearly erroneous. The burden of proof is on the agency to show that the documents are exempt from its duty to disclose. *Ollestad v. Kelley,* 573 F.2d 1109, 1110 (9th Cir. 1978); 5 U.S.C. § 552(a)(4)(B). The IRS' expert testified that in most cases the engineering and valuation reports (EVRs) would not identify individual taxpayers if the total volume of timber in each tract listed was deleted. Though the expert testified that in certain circumstances a knowledgeable person in the industry might be able to identify the individual taxpayer by the location of certain tracts, no specific evidence was given as to how often this danger of indirect identification might exist. The IRS's argument that "it is simply impossible to know what information might indirectly identify one of those specific taxpayers" is too speculative and not supported by facts.

The IRS contests the district court's finding that there is no danger of indirect identification as to the second group of documents, the compilations of timber sales data. The district court ordered the release of this data after deletion of the names of the taxpayers and the purchasers and the volumes of sale. The IRS argues that even with the volumes of sale deleted, a reader of the edited form could calculate the volumes as the forms often list the location of the tract of land, the volume of timber sold, the unit price, and the total sales price, and with this information identify the taxpayer. Our review of the private sales data compilations shows that there is little danger of such indirect identification from the edited form.[1]

The IRS also argues that the cost of editing would be extremely high and thus the district court was clearly erroneous in finding that the documents are reasonably segregable. It should be noted first that the government presented no evidence as to the number of files or pages involved in this particular request[2] nor specific estimates of the amount of editing required. Further, this court has already held that large costs of editing cannot per se make the request unreasonable. *Long v. IRS,* 596 F.2d at 367. As the IRS has the burden to demonstrate that the nonexempt portions of the documents are not "reasonably segregable," and has not given any specific evidence as to the magnitude of the cost of editing, the district court's finding cannot be held clearly erroneous.

## V.

■ The Haskell Amendment states that the term "return information" "does not include *data* in a form which cannot be associated with, or otherwise identify, directly or indirectly, a particular taxpayer." 26 U.S.C. § 6103(b)(2) (emphasis added).

---

1. We note that *FBI v. Abramson,* —— U.S. - ---, 102 S.Ct. 2054, 72 L.Ed.2d 376 (1982), does not require a contrary result. In *Abramson,* the Supreme Court held that material originally gathered for law enforcement purposes, which is exempt from disclosure under exemption 7(C), remains sheltered by the exemption even though the material is reproduced or summarized in a new document that is prepared for a non-law enforcement purpose. Even assuming that *Abramson* might apply to exemptions other than 7(C), this decision has no impact on the present case. Here, the data gathered by the IRS was not initially gathered for an exempt purpose.

2. The IRS in fact erroneously gives as a figure the amount of material involved before Willamette reduced its FOIA request by much more than half. The government in its reply brief disingenuously states that it used the original estimates "simply to illustrate the extent of the problem."

The IRS argues that the term "data" used here means that only compilations of data are required to be released under FOIA and that information such as the EVRs, which are extracted from individual tax returns and audit files, are not such data compilations and therefore exempt from disclosure. In *Long v. IRS, supra,* this court required disclosure of a data base utilized in the Taxpayer Compliance Measurement Program (TCMP). The IRS argues that the information required to be disclosed in *Long* were "compilations of data" and that *Long* should be limited to this situation.

We refuse to so limit *Long. Long* does not indicate that it should be so limited. Several other courts have applied *Long* to require the release of documents relating to specific taxpayers. *Moody v. Internal Revenue Service,* 654 F.2d 795 (D.C.Cir.1981); *Arthur Andersen & Co. v. Internal Revenue Service,* 514 F.Supp. 1173 (D.D.C.1981). *But see Cliff v. Internal Revenue Service,* 496 F.Supp. 568 (S.D.N.Y.1980).

In fact, the computer data tapes which were required to be disclosed in *Long* were not merely compilations of data but contained actual income tax returns in their entirety on an item-by-item basis, with only the taxpayers' names and addresses deleted. The information in *Long* is only a "compilation of data" because the tapes contained fifty thousand such individual tax returns, along with other audit information. *Long v. Bureau of Economic Analysis,* 646 F.2d 1310, 1314 n.1 (9th Cir. 1981), *vacated and remanded on other grounds,* 454 U.S. 934, 102 S.Ct. 468, 70 L.Ed.2d 242 (1981).

■ In any event, the information involved in this case is in effect compilations of data, compiled by the IRS from individual taxpayer returns, and does not include any actual return forms. The EVRs are

reports compiled by foresters which list timber tracts, amount of timber, and fair market valuation. The second type of information, the private sales data, is a compilation of comparable sales developed from other sources, utilized by the IRS in an audit to determine market value for individual tracts. Though this information is contained in the audit file of a particular taxpayer, it is a compilation of data relating to sales by other taxpayers.

Accordingly, the district court did not err in holding that the type of information requested here is covered by the Haskell Amendment and therefore is not exempt from disclosure.[3]

The judgment of the district court is AFFIRMED.

---

**3.** The IRS challenges the district court holding that the EVRs were "final opinions" and thus required to be maintained available for public inspection pursuant to 5 U.S.C. § 552(a)(2) ["reading room materials"].

We have already held that the documents are not exempt from disclosure under exemption 3, and thus they must be disclosed to the requesting plaintiffs under section 552(a)(3) as individual requested records. Whether the EVRs are final opinions is only relevant to determine if the IRS is required by the FOIA to maintain them for public inspection as "reading room materials." In the judgment prepared by plaintiff the IRS is only ordered to disclose the requested records to the plaintiffs, and there is no order that the EVRs be made available for public inspection as reading room materials. Thus, for purposes of this appeal, it is irrelevant whether the requested documents are final opinions required to be disclosed under 5 U.S.C. § 552(a)(2).