**CHURCH OF SCIENTOLOGY OF CALIFORNIA, Appellant,**

v.

**INTERNAL REVENUE SERVICE, et al.**

No. 83–1856.

United States Court of Appeals,
District of Columbia Circuit.

Argued April 11, 1984.

Decided May 27, 1986.

As Amended May 27, 1986.

Robert A. Seefried, Washington, D.C., for appellant.

Richard Wyndon Perkins, Atty., Dept. of Justice, with whom Glenn L. Archer, Jr., Asst. Atty. Gen., Joseph E. diGenova, U.S. Atty., Michael L. Paup and Stephen Gray, Attys., Dept. of Justice, Washington, D.C., were on brief, for appellees.

Before WRIGHT and SCALIA, Circuit Judges, and FRIEDMAN,* Circuit Judge

* Sitting by designation pursuant to 28 U.S.C.

of the United States Court of Appeals for the Federal Circuit.

Opinion for the Court filed by Circuit Judge SCALIA.

SCALIA, Circuit Judge:

This case arises out of the efforts of the Church of Scientology of California to obtain documents from the Internal Revenue Service under the Freedom of Information Act, 5 U.S.C. § 552 (1982) ("FOIA"). It requires us to review the District Court's grant of summary judgment to the IRS on the adequacy of its response to the Church's FOIA request. To do so we must consider, among other things, the relation between FOIA and the provisions of the Internal Revenue Code that govern disclosure of return information, 26 U.S.C. § 6103 (1982).

## I

On May 16, 1980 the Church sent a Freedom of Information request to the IRS. It comprises seven single-spaced typed pages and is extremely confused, but for purposes of this appeal it has been adequately summarized by the Church as essentially requesting:

1. All documents or records "relating to or containing the names of Scientology, Church of Scientology, any specific Scientology church or entity identified by containing the words Scientology, Hubbard and/or Dianetics in their names, L. Ron Hubbard or Mary Sue Hubbard," which could be located in a number of systems of records or files specifically identified in the FOIA request, "including but not limited to those located at the National Office, Regional Offices, Service Centers, District offices or Local IRS offices."

2. All documents generated, received or which otherwise came into the possession of the IRS subsequent to the preparation of an index in a tax case involving the Church of Scientology of California pending in the United States Tax Court,

§ 291(a).

*Church of Scientology of California v. Commissioner of IRS* [83 T.C. 381], (U.S. T.C.) [referred to below as the "Tax Court case"].

Brief for Appellants at 1–2.

The IRS's first response, dated July 22, 1980, requested additional time to "locate and consider releasing the Internal Revenue Service records to which you have requested access" and estimated that the Service would respond on August 29. On September 17, 1980, a response still not having been received, the Church filed an appeal to the Commissioner. After the IRS acknowledged but failed to respond to the appeal, the Church filed a complaint in the United States District Court for the District of Columbia on December 18, 1980 under 5 U.S.C. § 552(a)(4)(B) (1982). In January 1981 the IRS finally responded to the Church's request with a letter. For the sake of simplicity, we will limit our summary of that response to those factors that have some bearing on the issues here.

The IRS noted that it had limited the scope of the Church's request to documents pertaining to the California Church because the Church had not provided authorizations from any other Scientology entity nor from the Hubbards. Geographically the Service had limited the search to the National Office, the Covington, Kentucky, office and the Los Angeles office. The IRS claimed that all documents relating to the Tax Court case not previously released were exempt from disclosure under Section 6103(e)(7) because disclosure would seriously impair Federal tax administration. It released in full some national office documents acquired subsequent to the Tax Court case index, but justified only partial release of other National Office documents on grounds that they were outside the scope of the appeal, that their disclosure

would cause a clearly unwarranted invasion of privacy, *see* 5 U.S.C. § 552(b)(6), or that they reflected return information of third parties, *see* 26 U.S.C. § 6103(a).

After the IRS answered the complaint, the Church moved for an order requiring the IRS to prepare a *Vaughn* index of the withheld documents, *see Vaughn v. Rosen,* 484 F.2d 820 (D.C.Cir.1973), but the District Court denied the motion. Instead it ordered submission for in camera inspection of: (1) twenty-six documents located in the National Office which contained portions alleged to be exempt under 5 U.S.C. § 552(b)(6) because their disclosure would constitute an unwarranted invasion of personal privacy; (2) three documents located at the National Office for which exemption was claimed under Section 6103(e)(7) because their disclosure would impair federal tax administration; and (3) all documents generated in connection with the Tax Court case.[1] After in camera inspection of some 5,600 pages of documents, the District Court granted the IRS's motion for summary judgment and dismissed the action with prejudice in June 1983. The Church appealed. We have jurisdiction under 28 U.S.C. § 1291 (1982).

## II

█ The first issue we must address is the relation between FOIA and Section 6103. The Church argues that Section 6103 gives rise to an exemption from disclosure only under FOIA Exemption 3, 5 U.S.C. § 552(b)(3), and subject to the procedural provisions of FOIA, including its de novo review requirement. The IRS urges us to affirm the District Court's holding that Section 6103 totally supersedes FOIA and provides the exclusive criteria for release of records affected by that section, so that courts must uphold any IRS refusal to

---

1. In its opinion, *Church of Scientology of California v. IRS,* 569 F.Supp. 1165, 1171–72 (D.D.C. June 24, 1983), the court speaks of eight documents parts of which were withheld under the personal privacy exception, three documents parts of which were withheld because they dealt with third-party return information, and four documents parts of which were withheld be-

cause they were outside the scope of the plaintiff's request. The record does not explain the discrepancies between the number and type of documents ordered lodged in camera and the number and type of documents discussed in the court's opinion; but those discrepancies are not important for our disposition of this case.

disclose under Section 6103 that is not arbitrary or capricious and does not violate the other provisions of the Administrative Procedure Act.

The IRS relies principally on *Zale Corp. v. IRS*, 481 F.Supp. 486 (D.D.C.1979), which has been followed by the Sixth and Seventh Circuits, *see White v. IRS*, 707 F.2d 897, 900 (6th Cir.1983); *King v. IRS*, 688 F.2d 488, 495–96 (7th Cir.1982). We cannot agree with those decisions. FOIA is a structural statute, designed to apply across-the-board to many substantive programs; it explicitly accommodates other laws by excluding from its disclosure requirement documents "specifically exempted from disclosure" by other statutes, 5 U.S.C. § 552(b)(3); and it is subject to the provision, governing all of the Administrative Procedure Act of which it is a part, that a "[s]ubsequent statute may not be held to supersede or modify this subchapter ... except to the extent that it does so expressly," 5 U.S.C. § 559.[2] We find it impossible to conclude that such a statute was *sub silentio* repealed by § 6103. Insofar as is relevant to the issue here, the latter enactment does no more than what is done by *all* nondisclosure statutes covered by Exemption 3: it prohibits the disclosure of certain information (returns and return information). It differs from most other nondisclosure statutes only in that it specifies lengthy exceptions to its rule of nondisclosure. Not generally, but only in the painstaking detail of these exceptions, can it be considered—what *Zale* called it, 481 F.Supp. at 489—a "comprehensive scheme." But that sort of comprehensiveness has nothing to do with the appropriateness of continuing application of FOIA. Even the simplest nondisclosure statute, which makes *no* exceptions, is "comprehensive" in *that* sense—brief but comprehensive instead of lengthy and comprehensive. It would be another matter if § 6103 established some rules and procedures—duplicating those of FOIA—for individual members of the public to obtain access to IRS documents. But it does not. The entirety of its "comprehensive" detail relates to exceptions from the prohibition of disclosure—and even all of these, with three minor exceptions, *see* § 6103(k)(1), (3); § 6103(m)(1), pertain to disclosure to specified private individuals (*e.g.*, the taxpayer to whom the information relates) or government officials, rather than to the public at large. . That is to be contrasted with § 6110, enacted at the same time as § 6103, which specifically requires that IRS written determinations be "open to public inspection," and establishes procedures to obtain and restrain disclosure, time limits, the level of assessable fees, and an action to compel or restrain disclosure in the Claims Court. That scheme *is* a "comprehensive" one in the relevant sense—that is, in the sense of duplicating and hence presumably replacing the dispositions of FOIA. (Significantly, Congress did not leave us to speculate whether it was comprehensive enough to constitute an implicit *pro tanto* repeal of FOIA; the last subsection specifies that the prescribed civil remedy in the Claims Court shall be the exclusive means of obtaining disclosure, § 6110(*l*).)

From what has been said, it should be clear that we do not share *Zale*'s concern over our "duty to reconcile" FOIA and § 6103, 481 F.Supp. at 488, or over preventing FOIA from "negat[ing], supersed[ing], or otherwise frustrat[ing] the clear purpose and structure of § 6103," *id.* at 489. The two statutes seem to us entirely harmonious; indeed, they seem to us quite literally made for each other: Section 6103 prohibits the disclosure of certain IRS information (with exceptions for many recipients); and FOIA, which requires all agencies, including the IRS, to provide nonexempt information to the public, establishes the procedures the IRS must follow in asserting the § 6103 (or any other) exemption. Of

---

**2.** We do not suggest that an earlier Congress can limit the manner in which a later Congress may express its legislative acts. This provision, like any other, can presumably be repealed by implication. But it assuredly increases the burden that must be sustained before an intent to depart from the Administrative Procedure Act can be found.

course FOIA can loosely be said to "frustrate" the purposes of § 6103 in that it places upon the IRS the burden of sustaining its claimed exemption in de novo judicial review. But if that sort of frustration requires the conclusion that § 6103 must have been intended to supersede FOIA, then *all* subsequently enacted nondisclosure statutes supersede FOIA, and Exemption 3 has no application except to statutes already on the books when FOIA was passed—a state of affairs no one has suggested. For these reasons, and for some further reasons discussed in Judge Sirica's opinion in *Britt v. IRS,* 547 F.Supp. 808, 809–13 (D.D.C.1982), a decision of our district court subsequent to *Zale* and reaching the opposite conclusion, we hold, in agreement with the Fifth and Eleventh Circuits, that Section 6103 does not supersede FOIA but rather gives rise to an exemption under Exemption 3, 5 U.S.C. § 552(b)(3). *See Linsteadt v. IRS,* 729 F.2d 998, 1001–03 (5th Cir.1984); *Currie v. IRS,* 704 F.2d 523, 526–28 (11th Cir.1983).

### III

■ The Church objects to the IRS's decision not to search the files of its regional and district offices other than those in Los Angeles and Covington, Kentucky. FOIA requires agencies to make records available in response to any request "made in accordance with published rules stating the time, place, fees (if any), and procedures to be followed." 5 U.S.C. § 552(a)(3)(B). The IRS does not have a central file of records in which copies of all documents in its possession are retained. Its regulations therefore require requests to be made to the office of the official who is responsible for the control of the records requested, or if the person making the request does not know the official responsible, to the office of the director of the IRS district office in the district where the requester resides. 26 C.F.R. § 601.702(c)(3)(iii) (1984). The regulations specify in some detail which officials are responsible for documents and give their addresses. 26 C.F.R. § 601.-702(g).

It is undisputed that the Church did not direct its request to the officials in charge of the documents in regional and district offices, nor to the office of the director of the IRS district office in the district where the Church resides, but rather to the National Office of the IRS. The Service caused a search to be made of the records in its National Office, and in addition (though it was not technically required) of the records in the two field offices particularly pertinent to the Church's operations. In view of the statutory command that requests be made in accordance with published rules, the clarity of those rules, and the reasonableness of the IRS's treatment of the misdirected request, we find no merit in the Church's contention that the IRS's failure to inform it earlier that the request for a search of all district and regional offices was misdirected should have led the District Court to require a search of those offices.

### IV

The Church also challenges the IRS's decision to limit the search to files whose titles refer to the California Church. That decision involved two separate but related limitations: (1) restricting the search to those files whose subjects indicate that their contents are related to Scientology, the Hubbards, etc., rather than searching through all files, whatever their subject, that might contain some information responsive to the request; and (2) restricting the search further to those files whose subject is the California Church on grounds that the information in all requested files on other Scientology organizations, the Hubbards, etc., is return information and therefore exempt from disclosure to the California Church.

■ The IRS justifies the first restriction on grounds that a request for all information on Scientology in its files fails to meet the statutory requirement of "reasonably describ[ing] such records," 5 U.S.C. § 552(a)(3). It is firmly established that "an agency is not 'required to reorganize [its] files in response to [a plaintiff's] re-

quest in the form in which it was made.'" *Goland v. CIA,* 607 F.2d 339, 353 (D.C.Cir. 1978) (*quoting Irons v. Schuyler,* 465 F.2d 608, 615 (D.C.Cir.), *cert. denied,* 409 U.S. 1076, 93 S.Ct. 682, 34 L.Ed.2d 664 (1972)). "[I]f an agency has not previously segregated the requested class of records production may be required only 'where the agency [can] identify that material with reasonable effort.'" *Id. (quoting National Cable Television Association, Inc. v. FCC,* 479 F.2d 183, 192 (1973)). Thus, the IRS would doubtless be within the law in restricting its search to files whose subjects indicate a connection with Scientology. It was not required to search through every file in its possession to see if a reference to Scientology appeared somewhere in it—for example, because a taxpayer claimed a deduction for a contribution to a Scientology organization. However, the problem at this stage of the litigation is that the District Court had only the IRS's generalized assertion that it had examined the appropriate subject files. Indeed, it did not have even that, because of the further limitation restricting the search to the California Church alone, which we will discuss below. In these circumstances, we cannot conclude that the agency sustained the burden of justifying its actions, *see* 5 U.S.C. § 552(a)(4)(B), even with regard to the first limitation. Summary judgment on this point would require an affidavit reciting facts which enable the District Court to satisfy itself that all appropriate files have been searched, *i.e.,* that further searches would be unreasonably burdensome. Such an affidavit would presumably identify the searched files and describe at least generally the structure of the agency's file system which makes further search difficult. *Cf. Goland v. CIA,* 607 F.2d at 352–53 (agency met its burden of proving that it made a full search in good faith with relatively detailed, nonconclusory affidavits).

But the first limitation was in any event superseded by the limitation to records of the California Church. The IRS does not appear to dispute that the Church's request reasonably describes information directly relating to some other Scientology organizations and contained in files whose titles would enable identification without undue burden. Its decision not to search these files appears to rest exclusively on grounds that they contain only return information protected by Section 6103.

■ The Church asserts that these grounds are patently inadequate, since (1) return information consists only of data that identify or can be associated with the taxpayer to whom they pertain, (2) FOIA's requirement that "reasonably segregable" portions of otherwise exempt documents must be provided, 5 U.S.C. § 552(b), would mandate production of the data after redaction of material that enables identification or association, and (3) the possibility of redaction can only be assessed on a document-by-document basis. The crucial first premise of this argument has been considered by this court en banc and, by an opinion issued simultaneously with the present opinion, has been rejected. *Church of Scientology v. IRS,* 792 F.2d 153 (D.C.Cir. 1986) (en banc). The mere deletion of identifying material will not cause the remainder of the return information to lose its protected status, and document-by-document examination to determine the possibility of redaction for that purpose is therefore unnecessary.

■ This is still not sufficient, however, to sustain the IRS's bald contention that it need not search the file of any Scientology organization other than the California Church. That contention would be justified only if, as a matter of law, all information in IRS files is return information. That is unquestionably not so. Congress would not have adopted such a detailed definition of return information in Section 6103 if it had simply intended the term to cover all information in IRS files; and we have no authority to substitute the one disposition for the other. Here the Church requested, for example, information from Treas/IRS System Number 26.005, "File of Persons Making Threats of Force or Forcible Assaults." If such a files system exists, it seems unlikely that its contents consist en-

tirely of return information as defined in Section 6103. In any case, before the IRS's claim that all information in the requested files is protected can be upheld, it must make an appropriate showing that all information comes within the statutory definition.

██ For the reasons just given, the District Court erred in accepting the IRS's blanket assertion that all information responsive to the Church's request in files not relating to the California Church was exempt from disclosure. This does not mean, however, that the IRS must, as the Church would have us hold, prepare a *Vaughn* index of all documents in its files relating to third parties for which it claims an exemption under Section 6103 and Exemption 3. *See Vaughn v. Rosen*, 484 F.2d at 826–29. If the IRS claims that a particular document is exempt from disclosure because it contains information on one of the specific subjects protected by Section 6103—for example, information about deductions claimed by a taxpayer—a *Vaughn* index may be required in order to show that the document does not contain segregable portions that could be disclosed without revealing such information. When, however, a claimed FOIA exemption consists of a generic exclusion, dependent upon the category of records rather than the subject matter which each individual record contains, resort to a *Vaughn* index is futile. Thus, in *NLRB v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 98 S.Ct. 2311, 57 L.Ed.2d 159 (1978), the Supreme Court upheld, without any provision of a *Vaughn* index, the Labor Board's refusal to provide under FOIA witness statements obtained in the investigation of pending unfair labor practice proceedings. A *Vaughn* index would have served no purpose since, as the Court held, Exemption 7(A), which excludes from required disclosure "investigatory records ... to the extent that the production of such records would ... interfere with enforcement proceedings," 5 U.S.C. § 552(b)(7)(A), did not require a showing that each individual document would produce such interference, but could rather be applied generically, to classes of records

such as witness statements. *See also Campbell v. Department of Health and Human Services*, 682 F.2d 256, 265 (D.C. Cir.1982) (government required to provide affidavits but not *Vaughn* index to establish applicability of Exemption 7(A)); *Brinton v. Department of State*, 636 F.2d 600, 606 (D.C.Cir.1980) (invocation of the deliberative process exclusion of Exemption 5 upheld on the basis of affidavits and no index); *Mervin v. FTC*, 591 F.2d 821, 826 (D.C.Cir.1978) (invocation of the attorney's work product exclusion of Exemption 5 upheld on the basis of affidavit and no index); *Barney v. IRS*, 618 F.2d 1268, 1272–74 (8th Cir.1980) (invocation of Exemption 7(A) upheld on the basis of affidavits and no index). If, therefore, the Commissioner's assertion of a Section 6103 exemption rests upon such generic grounds, he will ordinarily be able to make the requisite showing with an affidavit sufficiently detailed to establish that the document or group of documents in question actually falls into the exempted category. Some portions of § 6103 are plainly susceptible of such generic application—particularly that portion which defines protected return information to include all information, no matter what its subject, "received by, recorded by, prepared by, furnished to, or collected by the Secretary with respect to a return or with respect to the determination of the existence, or possible existence, of liability (or the amount thereof) of any person ... for any tax, penalty, interest, fine, forfeiture, or other imposition, or offense," 26 U.S.C. § 6103(b)(2)(A).

In light of the foregoing discussion, the IRS must either conduct a new search for information responsive to the Church's request that refers to third parties or establish through affidavits that all information about third parties in identifiable files requested by the Church is generically protected by Section 6103. If a new search produces any third party information responsive to the Church's request, the IRS must either disclose it or justify withholding it in light of one of the FOIA exemp-

tions through affidavits and, where necessary, *Vaughn* indices.

█ The IRS's search uncovered a large number of documents responsive to the Church's request and relating specifically to the California Church. It claimed exemption for the majority of these documents—concretely the Tax Court case documents—on the ground that disclosure "would seriously impair Federal tax administration," 26 U.S.C. § 6103(c). Selected portions of a much smaller group of documents not related to the Tax Court case were withheld under various FOIA exemptions because they contained personal information or third party return information, or because they exceeded the scope of the Church's request. The Court upheld the IRS's claim of exemption on the basis of *in camera* examination of a representative sample of the documents, without the benefit of detailed public affidavits or indices.[3] While *in camera*, individual inspection of each of a small number of documents without detailed public affidavits and *Vaughn* indices is sometimes acceptable, *see Currie v. IRS*, 704 F.2d at 530–31, such an approach cannot be applied to large numbers of documents—much less to large numbers of documents that represent only a sampling. It places unrealistic and unsustainable demands upon the trial court and the reviewing appellate panel, and therefore must be replaced or supplemented by the adversary testing which public affidavits and indices seek to provide. *See Vaughn v. Rosen*, 484 F.2d at 825. With respect to these documents, therefore, the District Court should have required the IRS to sustain its burden of proving that the documents it sought to withhold were exempt from disclosure through an appropriate combination of detailed public affidavits and (if necessary) indices, resorting to *in camera* examination of documents and affidavits only where these proved inadequate. We note in this regard that the asserted exemption for documents whose

disclosure "would seriously impair Federal tax administration," 26 U.S.C. § 6103(c), is analogous to the exception at issue in *Robbins, supra,* for documents whose disclosure would "interfere with enforcement proceedings," 5 U.S.C. § 552(b)(7)(A), and like that exemption should be sustainable generically, as applied to certain categories of documents, on the basis of affidavits and without *Vaughn* indices.

The order of the District Court is vacated and this case is remanded to the District Court for further proceedings consistent with this opinion. At the conclusion of such proceedings, the Church may renew its motion for an award of attorney fees if it so desires.

*So ordered.*

---

3. The District Court does mention that the IRS indexed twenty-one documents located in its National Office, but its opinion seems to suggest that the court relied entirely upon *in camera* examination. *See Church of Scientology of California v. IRS,* 569 F.Supp. 1170–72.